AB:RJN

M-11-380

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

KEITH LEVINE,
    also known as
    "Tutti" and
MICHAEL ARROYO,

        Defendants.

- - - - - - - - - - - - - - - - - X

C O M P L A I N T

(21 U.S.C. §§ 841(a)(1),
841(b)(1)(B)(vii); and
18 U.S.C. §§ 3551
et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

    FRANK ADAMO, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

    Upon information and belief, on or about and between March 1, 2011 and April 11, 2011, the defendants KEITH LEVINE, also known as "Tutti," and MICHAEL ARROYO, together with others, did knowingly and intentionally possess with intent to distribute a controlled substance, which offense involved over 100 marijuana plants, a schedule I controlled substance.

    (Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(vii); Title 18, United States Code, Sections 3551 et seq.)

The source of my information and the grounds for my belief are as follows:[1]/

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been a Special Agent with the DEA for approximately thirteen years. I am currently assigned to a DEA squad that investigates the organized crime families of La Cosa Nostra ("LCN"). During my tenure with the DEA, I have participated in investigations that have included, among other investigative techniques, the use of physical surveillance, execution of search warrants, consensual recordings of individuals associated with narcotics trafficking and debriefing of confidential sources and cooperating witnesses. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are imported and distributed and the manner in which marijuana is grown domestically, the method of payments for such drugs and the efforts of persons involved in such activity to avoid detection by law enforcement. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my conversations with other law enforcement officers and investigators, my review of documents and surveillance video, and

---

[1] Because the purpose of this Affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

my own training and experience. Where conversations or statements of others are related in this affidavit, they are related in substance and in part, unless otherwise indicated.

2. Among other duties, I have been participating in an investigation relating to the drug trafficking activities of KEITH LEVINE, also known as "Tutti," and his co-conspirators. As discussed below, the investigation has revealed that LEVINE illegally distributes marijuana and other controlled substances. The investigation has further revealed that, among his drug trafficking activities, LEVINE is responsible for managing a local marijuana growing operation for another co-conspirator ("CC1").

3. A Confidential Source ("CS1")[2] has recently advised that an individual known as "Tutti," whose real name, according to CS1, is KEITH LEVINE, is responsible for running a marijuana growing operation for CC1. CS1 identified LEVINE's area of residence on Staten Island, New York and his car. He also provided a physical description of LEVINE.

---

[2] CS1 is a paid informant for the DEA. CS1 has provided law enforcement agents with information corroborated by additional sources of information such as other confidential informants, cooperating witnesses, wiretap intercepts and surveillance. CS1 has a criminal history that includes a conviction for drug trafficking.

4.  CS1 has advised that in late 2010 or early 2011, CC1 offered to sell CS1 marijuana for $5,000 per pound. CC1 informed CS1 that he grew the marijuana locally.

5.  CS1's information is corroborated by another confidential source ("CS2").[3] CS2 advised that CC1 told CS2 that CC1 grew marijuana locally and that Tutti was responsible for growing and tending to the marijuana plants.

6.  Between March and April 2011, I have observed LEVINE (i.e. "Tutti"), whose physical appearance matches the description provided by CS1, meeting with CC1, and I have also observed LEVINE entering and exiting a gray, rectangular building located at 30-75 Veterans Road West, Staten Island, New York (the "Marijuana Grow House").

7.  Specifically the following observations were made during surveillance:

    (a)  On or about March 29, 2011, LEVINE left his car, a white, Infinity M45, which matches the description provided by CS1, registered to John Levine, at a Car Wash near the "Marijuana Grow House" around 5:02 PM. About one and a half

---

[3] CS2 has committed crimes including Hobbs Act robberies and narcotics trafficking. CS2 is in a position to testify but has not yet signed an agreement to testify. CS2 is cooperating with the government in the hope of obtaining leniency at sentencing and possible entry into the Witness Security Program. CS2's information has been corroborated by other sources of information, including but not limited to consensual recordings, confidential sources and cooperating witnesses.

4

hours later, at 6:30 PM, LEVINE exited 25-14 Veterans Road West (the house adjacent to the Marijuana Grow House). He was not observed between 5:02 PM and 6:30 PM. Shortly after leaving the house at 25-14 Veteran Road West, LEVINE met with CC1 and then entered a minivan with CC1.

(b) On April 1, 2011, LEVINE exited the Marijuana Grow House at approximately 2:30 PM. As he left, LEVINE locked the metal gate over the entrance of the Marijuana Grow House and turned on the outdoor light. LEVINE then looked up and down the street repeatedly. Based on my training and experience, I believe that LEVINE was checking for the presence of law enforcement. As LEVINE walked from the Marijuana Grow House to his car, he continued to act in a surveillance-conscious manner.

(c) On April 8, 2011, at approximately 1:18 PM, LEVINE turned off the outdoor light and entered the Marijuana Grow House. He exited after approximately one hour, and again acted in a surveillance-conscious manner.

(d) On April 11, 2011, beginning at approximately 11:35 AM, the white, Infinity M45 referenced-above in paragraph 8(a) was parked near the Marijuana Grow House. The large, garage-like door to the Marijuana Grow House was unlocked, and the light above the door was turned off. (Because, as indicated above, I have previously observed LEVINE turn off the light upon

entering the Marijuana Grow House and turn on the light when he leaves, I believed LEVINE to be inside the Marijuana Grow House).

(e) At approximately 12:45 PM, another individual, later identified as ARROYO, entered the Marijuana Grow House carrying several large, clear garbage bags. Based on my training and experience, the bags are of the type used to harvest marijuana plants.

8. Based in part on the information set forth above, a search warrant was obtained for the Marijuana Grow House on or about April 11, 2011.

9. While law enforcement agents were preparing to execute the warrant, LEVINE and ARROYO exited the Marijuana Grow House and were detained so that the search warrant could be executed. (ARROYO had a marijuana leaf on his shoulder).

10. Inside the premises were three separate rooms containing a total of approximately 500 or more marijuana plants at different stages of growth, large bags containing dried marijuana leaves and a freezer fully of gallon-sized plastic bags containing harvested marijuana packaged for sale. Among other items, seeds, bags of fertilizer, heat lamps, irrigation tools, and books and records reflecting, among other things, different marijuana plant types and growing cycles, were also discovered.

WHEREFORE, your deponent respectfully requests that the defendants KEITH LEVINE AND MICHAEL ARROYO be dealt with according to law.

FRANK ADAMO
Special Agent
Drug Enforcement Administration

Sworn to before me this
12th day of April, 2011